**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONOPCO, INC. d/b/a UNILEVER. | **Case No. 22-cv-03480-AT** |
| *Plaintiff,* | |
| v. | **[PROPOSED] FIRST AMENDED COMPLAINT** |
| 2026 THIRD REALTY, LLC, HAE HEE KIM, COURTNEY HAEJIN KIM, DANIEL HUNGSIK KIM, BRYANT KIM, K & K FOOTWEAR, INC., YOUSSOUF DIAGOURAGA, MUSTUFA GANCHI, AMIS DISCOUNTED FURNITURE, LLC, VIBRANT PRINTING AND GRAPHIC CORP., AND JOHN DOES 1-10, inclusive, | **Jury Trial Requested** **FILED UNDER SEAL** |
| *Defendants.* | |

Plaintiff Conopco, Inc. d/b/a/ Unilever ("Unilever"), by and through the undersigned counsel, as and for its Complaint against Defendants 2026 Third Realty, LLC, Hae Hee Kim, Courtney Haejin Kim, Daniel Hungsik Kim, Bryant Kim, K & K Footwear, Inc., Youssouf Diagouraga, Mustufa Ganchi, AMIS Discounted Furniture LLC, Vibrant Printing and Graphic Corp., and John Does 1-10, inclusive (collectively, the "Defendants"), hereby amends its original Complaint as follows based on knowledge of its own actions, and on information and belief as to all other matters based on newly-discovered evidence:

## NATURE OF THE ACTION

1.      This is an action under the Trademark Laws of the United States, Title 15 U.S.C. §§ 1051, *et seq.*, for trademark counterfeiting and infringement, unfair competition, and dilution pursuant to the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and (c), respectively.  In addition, this is an action for trademark counterfeiting and infringement, dilution, and unfair competition, in violation of the common law and the statutes of the state of New York.

1

2.      Unilever is one of the world's largest, most successful, and well-known consumer goods companies, known for its commitment to high-quality goods in the food and beverage, home care, and beauty and cosmetic industries.  Unilever owns and operates some of the world's most iconic brands, including, but not limited to, HELLMANN'S, LOVE BEAUTY AND PLANET, DOVE, VASELINE, TRESEMMÉ, and SUAVE.

3.      Consumers trust the HELLMANN'S brand and have come to associate it with high-quality mayonnaise and other food products.

4.      Defendants market and sell counterfeit and potentially hazardous mayonnaise using the HELLMANN'S Marks (as defined below) without authorization ("Counterfeit Products"), thereby creating consumer confusion as to whether such products are affiliated, endorsed, and/or sponsored by Unilever.  Defendants' actions, as detailed below, put consumer health and safety at risk, maliciously tread upon the goodwill of the HELLMANN'S brand, owned by Unilever, and have harmed and continue to harm Unilever and the public.

5.      The ongoing COVID-19 pandemic has caused an increase in demand for food products.  Many stores globally continue to have shortages and high demands as markets struggle to fill market holes caused by COVID-19 and related supply chain issues which are compounded by the war in Ukraine.[1]  The supply chain shortages and increased demand for food products make the marketplace especially vulnerable to counterfeiters who prey on consumers and vendors.

---

[1] *See, e.g.*, Siddharth Cavale and Christopher Walljasper, *U.S. grocery shortages deepen as pandemic dries supplies*, Reuters, *available at* https://www.reuters.com/business/us-grocery-shortages-deepen-pandemic-dries-supplies-2022-01-14/ (Published Jan. 14, 2022; Last Accessed Apr. 25, 2022) ("High demand for groceries combined with soaring freight costs and Omicron-related labor shortages are creating a new round of backlogs at processed food and fresh produce companies, leading to empty supermarket shelves at major retailers across the United States; Megan Cerullo, *Product shortages and soaring prices reveal fragility of U.S. supply chain*, CNBC, *available at* https://www.cbsnews.com/news/product-shortages-inflation-supply-chain-2022/ (Published Apr. 13, 2022; Last Accessed Apr. 25, 2022) ("Grocery shoppers have likely noticed an empty shelf of late where household staples like baby formula or sunflower oil are normally on display . . . Ongoing supply problems due to COVID-19 and more

**PARTIES**

6.      Plaintiff Conopco, Inc. d/b/a Unilever is a New York corporation with its principal place of business at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

7.      Defendant 2026 Third Realty, LLC is a New York corporation with its principal place of business at 2026 3rd Avenue New York, NY 10029-2886.

8.      Defendant Hae Hee Kim is an individual residing at 152 Delaware Avenue, Haworth, New Jersey 07641.

9.      Defendant Courtney Haejin Kim is an individual residing at 152 Delaware Avenue, Haworth, New Jersey 07641.

10.      Defendant Daniel Hungsik Kim is an individual residing at 152 Delaware Avenue, Haworth, New Jersey 07641.

11.      Defendant Bryant Kim is an individual residing at 152 Delaware Avenue, Haworth, New Jersey 07641.

12.      Defendant K & K Footwear, Inc. is a New York corporation with a principal place of business at 1992 3rd Avenue, New York, New York 10029.

13.      Defendant Youssouf Diagouraga is an individual with a business address at 2026 3rd Avenue, New York, New York 10029.

14.      Defendant Mustufa Ganchi is an individual with a business address at 4015-B White Plains Road, Bronx, New York 10466.

15.      Defendant AMIS Discounted Furniture LLC is a New York corporation with a principal place of business at 2026 3rd Avenue, New York, New York 10029, 2022 3rd Avenue,

---

recently Russia's war on Ukraine, which has limited the availability of certain crops, mean the complex chain linking suppliers, manufacturers, shippers and retailers to consumers remains fragile.").

3

New York, New York 10029, 2020 3rd Avenue, New York, New York 10029, and/or 2236 3rd Avenue, New York, New York 10029.

16.     Defendant Vibrant Printing and Graphic Corp. is a New York corporation with a principal place of business at 4015-B White Plains Road, Bronx, New York 10466.

17.     Unilever is presently unaware of the true names of the Defendants identified in the Complaint under the fictitious names Does 1-10.  Unilever will amend its Complaint to identify the names of the Doe Defendants as they are discovered.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction under 28 U.S.C. § 1338 as this civil action arises under an Act of Congress related to trademarks.  This Court has jurisdiction under 28 U.S.C. § 1367 and the doctrine of pendent jurisdiction over the state law claims as substantial and so related to the claims arising under federal law that they form part of the same case and controversy under Article III of the United States Constitution.

19.     This Court may exercise jurisdiction over Defendants because the causes of action alleged herein arose in whole or in part in New York.  Defendants are manufacturing, shipping, providing, advertising, selling, and/or offering to sell the Counterfeit Products in this judicial district.

20.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) on the ground that the infringing acts alleged herein arose, in whole or in part, within this judicial district.

## BACKGROUND FACTS

### I.      THE HELLMANN'S MARKS, BRAND, AND BUSINESS

4

21.    Since at least 1926, Unilever (including through predecessors) has used the iconic HELLMANN'S brand in connection with mayonnaise and related food products in the United States.

22.    Unilever is the owner of the several valid and subsisting trademark registrations for the HELLMANN'S trademarks and logos, which appear on the Principal Register in the United States Patent and Trademark Office ("PTO"), and alone or in combination on all authentic Hellmann's® mayonnaise ("Genuine HELLMANN'S Products"), including:

| Mark | Registration No. | Date Registered | Goods/Services |
|---|---|---|---|
| HELLMANN'S (Stylized)  | 0514280 | August 23, 1949 | Mayonnaise, salad dressings, sandwich spread, and tartar sauce |
|  | 1017067 | July 29, 1975 | Salad dressing, mayonnaise, mayonnaise dressing, and relish sandwich spread; tartar sauce |
| BLUE RIBBON HELLMANN'S REAL MAYONNAISE  | 1236589 | May 3, 1983 | Mayonnaise |
| BRING OUT THE BEST | 1478873 | March 1, 1988 | Mayonnaise |
| HELLMANN'S 'BRING OUT THE BEST'  | 4721213 | April 14, 2015 | Mayonnaise and salad dressings |
| Richard Hellmann (Stylized)  | 5514321 | July 10, 2018 | Mayonnaise; tartar sauce; sandwich spread comprised |

| | | | |
|---|---|---|---|
| | | | primarily of mayonnaise, ketchup, relish, mustard or tartar sauce |
| HELLMANN'S EST. 1913  | 5869191 | September 24, 2019 | Mayonnaise; dressings for salad; ketchup; tomato sauce; sauces; relish; mustard; vinegar. |
| HELLMANN'S EST. 1913  | 6357670 | May 18, 2021 | Oils and fats for food. |

(hereinafter, the "HELLMANN'S Marks").

23.     As a result of billions of dollars in sales, widespread advertising and promotion through virtually every available type of media, and commercial success and recognition, the HELLMANN's Marks have been famous for decades.

24.     The public relies on the HELLMANN's Marks to indicate that the products offered thereunder are of the same superior quality that consumers have come to expect from the brand. Indeed, Unilever uses stringent quality control and other measures to deliver the highest quality products to its customers and ensure their health and safety.

II.     **DEFENDANTS' INFRINGING ACTIVITIES**

25.     On or around April 11, 2022, members of the public noticed large quantities of Counterfeit Products visible through the windows of what appears to be an empty storefront located at 2026 3rd Avenue New York, New York 10029.

26.     As shown in the representative examples below, the Counterfeit Products at the First Location (as defined below) have attracted attention on social media:



27.     The social media attention culminated in a NEWSWEEK article commenting on "the mysterious mayonnaise haul . . . in East Harlem": [2]

---

[2] Rebecca Flood, *'Mayo Clinic': Questions Surround NYC Building Overflowing With Mayonnaise*, Newsweek, *available at* https://www.newsweek.com/new-york-building-overflowing-mayonnaise-questions-1697647 (Published Apr. 13, 2022; Last Accessed Apr. 25, 2022).



28.      In response to the social media and press coverage, a Unilever employee visited the First Location on or about April 18, 2022.  The Counterfeit Products were visible through the glass door and windows at the First Location, as shown below:

8





29.     Unilever conducted a detailed visual inspection and analysis of the Counterfeit Products.  Unilever concluded that the products are almost certainly counterfeit.  Specifically, the

9

Counterfeit Products differ from the Genuine HELLMANN'S Products in at least the following respects:

a.   Unilever does not use the batch code format featured on the Counterfeit Products, below:



Instead, Unilever uses the following unique format to identify the date, plant, production line, and time on the Genuine HELLMANN'S Products:



b.   The batch code expiration date appears to be pre-printed on the label of the Counterfeit Products; Unilever does not imprint the batch code date on the labels of its Genuine HELLMANN'S Products, rather the date is later laser coded on to the label during production, at the time the product is packaged at a plant.

c.   Genuine HELLMANN'S Products do not use the type of pressure-sensitive labels that appear on the Counterfeit Products (shown above).

d.   Unlike the Genuine HELLMANN'S Products, the shrink wrap around the case of the Counterfeit Products appeared loose, not properly sealed, and likely taped over with product tape:



The shrink wrap on the Genuine HELLMANN'S Products goes through the heat tunnel process to ensure that the shrink wrap is tightly attached to the jars to secure them during transporting the products. By contrast, the shrink wrap on the Counterfeit Products is loose.

e.   The graphic on the following Counterfeit Product label differs from the graphic on the Genuine HELLMANN'S Products:

11

 

**Counterfeit Product**          **Genuine HELLMANN'S Product**

Specifically, the Genuine HELLMANN'S Product label features an image of eggs on a yellow background.  By contrast, the Counterfeit Product label features an image of eggs on a blue background, and the image also appears to be upside down.

30.     Unilever then retained Polaris Corporate Risk Management LLC, a respected firm specializing in investigations, including counterfeiting-related investigations (the "Investigators"). The Investigators visited the First Location on or about April 23, 2022 and observed that a metal gate at the First Location was closed, and the Counterfeit Products inside were thus not visible.

31.     Although the gate was closed at the time of the April 23, 2022 visit, the Investigators approached several nearby residents.   Those residents disclosed that the gate concealed numerous containers of Counterfeit Products which they claimed to have observed when the gate was previously opened.  They further confirmed that the storefront had garnered interest from passersby, who would capture images of the Counterfeit Products.

32.     On April 29, 2022, the Court granted Unilever's Application for an *Ex Parte* Temporary Restraining Order; Order Authorizing *Ex Parte* Seizure; Order to Show Cause for Preliminary Injunction; and Order Allowing Expedited Discovery ("Original TRO Application") and issued an *Ex Parte* Temporary Restraining Order; Order Authorizing *Ex Parte* Seizure; Order

12

to Show Cause for Preliminary Injunction; and Order Allowing Expedited Discovery ("Original TRO").

33.      On May 3, 2022, with the assistance of the New York Police Department and Haworth, New Jersey Police Department, the Investigators executed the seizure order included in the Original TRO at three locations:  (1) 2026 3rd Avenue, New York, New York 10029 (the "First Location"), (2) 1992 3rd Avenue, New York, New York 10029 (the "Second Location"); and (3) 152 Delaware Avenue, Haworth, New Jersey 07641 (the "Third Location").

34.      Investigators encountered an unidentified Black male ("Individual 1") at the First Location, who voluntarily offered information about the Counterfeit Products.   Individual 1 claimed that the Counterfeit Products were expired and originally purchased from Unilever.

35.      Investigators subsequently encountered an unidentified Hispanic male ("Individual 2") outside the First Location, who voluntarily provided additional information about the Counterfeit Products.   Individual 2 advised that the owners of Defendant AMIS Discounted Furniture LLC ("AMIS Furniture") affixed fake labels on mayonnaise products.

36.      Upon information and belief and based on Unilever's follow-up investigation, the Counterfeit Products to which one or more of the Defendants had affixed fake labels were originally purchased on a "close out" sale" (i.e., sale of products close to expiration date at a discount) and have since expired (likely in or around March 2022).

37.      Investigators discovered the following evidence at the First Location:

- Garbage bags filled with removed HELLMANN'S mayonnaise labels;

- Several boxes that appeared to be shipped from Defendants Ganchi and Vibrant Printing and Graphic Corp. ("Vibrant Printing"), suggesting that Vibrant Printing was involved in creating fake labels for the Counterfeit Products;

- Documents showing a listed address for AMIS Furniture at 2022 3rd Avenue, New York, New York 10029; and

- Various bank statements and checks addressed to and from AMIS Furniture.

38.     When Investigators requested information about the current location of the Counterfeit Products, Individual 2 advised that the Counterfeit Products were removed from the First Location the day before, on May 2, 2022. After the expired products were relabeled, upon information and belief, some of the Counterfeit Products were likely moved from the First Location on May 2, 2022 to Port Newark to be shipped via container vessel to Gambia.

39.     During the seizure at the Third Location, the Investigators located, among other items, a lease agreement between Defendant 2026 Third Realty, LLC and Defendants AMIS Furniture and Diagouraga. Moreover, the Investigators located checks from a number of financial institutions that, upon information and belief, are tied to the manufacturing, sale, and/or distribution of the Counterfeit Products.

40.     During the seizure at the First and Third Location, Investigators also located documents revealing that AMIS Furniture is affiliated with several storefronts near the First Location, including (1) 2020 3rd Avenue, New York, New York 10029; (2) 2022 3rd Avenue, New York, New York 10029; and (3) 2236 3rd Avenue, New York, New York 10029.

41.     Defendants are using and will continue to use the HELLMANN'S Marks, brand, and goodwill as a trusted mayonnaise producer to circumvent health and safety standards. Thus, the marketing and sale of the Counterfeit Products and use of the HELLMANN'S Marks also pose a serious health risk to the general public.

14

42.     The health and safety practices employed by Defendants in the creation, processing, and distribution of the Counterfeit Products are unknown.   Accordingly, it is imperative that Defendants' use of the HELLMANN'S Marks is curbed immediately.

43.     The unauthorized use of the HELLMANN'S Marks directly infringes on the family of HELLMANN'S Marks owned by Unilever.

44.     As a direct and proximate result of Defendants' infringement of Unilever's HELLMANN'S Marks, Unilever has suffered and will continue to suffer great damage and irreparable harm that cannot fully be compensated or measured in money.   Unilever is thereby entitled to injunctive relief against Defendants, as well as all other remedies available under the Lanham Act.

### FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS
### TRADEMARK COUNTERFEITING AND INFRINGEMENT
#### (15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35)

45.     Unilever repeats and incorporates by reference herein its allegations contained in paragraphs 1-42 of this Complaint.

46.     Unilever is the owner of each of the federally registered HELLMANN'S Marks.

47.     Unilever has the exclusive right to use each of the HELLMANN'S Marks in United States commerce for, *inter alia*, advertising, promoting, offering for sale, and selling Unilever's HELLMANN'S brand mayonnaise and other food products.

48.     Unilever's exclusive rights in and to each of the HELLMANN'S Marks predate any rights that Defendants could establish in and to any mark that consists of "HELLMANN'S" in whole and/or in part.

49.     Defendants are, without consent or authorization, intentionally and knowingly using, reproducing, manufacturing, marketing, displaying and/or distributing, in interstate commerce, Counterfeit Products bearing the HELLMANN'S Marks.

50.     The Lanham Act defines a "counterfeit" as "a spurious mark which is identical to, or substantially indistinguishable from, a registered mark." 15 U.S.C. §1127. The designations that appear on the Defendants' products are counterfeit and implemented in the same manner as the HELLMANN'S Marks that appear on the Genuine HELLMANN'S Products. As such, likelihood of confusion is presumed.

51.     Defendants' use of the HELLMANN'S Marks, which are used on identical, albeit non-genuine goods, constitute the use of a counterfeit mark under 15 U.S.C. § 1116(d).

52.     Defendants are engaged in the creation, marketing, sale, and distribution of counterfeit mayonnaise products bearing the HELLMANN'S Marks. Defendants' conduct thus constitutes trademark infringement in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

53.     Defendants have made, and will continue to make, substantial profits and gain from their unauthorized use of Unilever's HELLMANN'S Marks to which Defendants are not entitled at law or in equity.

54.     The injuries and damages sustained by Unilever have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of the Counterfeit Products.

55.     Unilever has no adequate remedy at law, and, if Defendants' actions are not enjoined, Unilever will continue to suffer irreparable harm to its reputation and the goodwill of its well-known HELLMANN'S Marks and brand.

## SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS
### FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

56.     Unilever repeats and incorporates by reference herein its allegations contained in paragraphs 1-53 of this Complaint.

57.     Defendants' use of the HELLMANN'S Marks in commerce is a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact.

58.     Defendants' use of the HELLMANN'S Marks is likely to cause confusion or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Unilever's goods, services, and/or commercial activities.

59.     Defendants' conduct violates 15 U.S.C. § 1125(a).

60.     Defendants' conduct has caused damage to Unilever.  Defendants' conduct will cause further irreparable injury to Unilever if it is not restrained by this Court from further violation of Unilever's intellectual property rights.

61.     Unilever's remedy at law is not by itself adequate.  Unilever has suffered, and continues to suffer, irreparable harm such that Unilever is entitled to injunctive relief.

62.     Accordingly, the Defendants' conduct constitutes unfair competition pursuant to 15 U.S.C. § 1125.

63.     Defendants' bad faith violations of 15 U.S.C. § 1125 also entitles Unilever to an Order from the Court directing the forfeiture and seizure of the Counterfeit Products.

## THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS
### DILUTION
### (15 U.S.C. § 1125(c))

64.     Unilever repeats and incorporates by reference herein its allegations contained in paragraphs 1-61 of this Complaint.

17

65.     Unilever is the owner of the famous registered trademark HELLMANN'S. The mark is inherently distinctive and has acquired distinctiveness through long and continuous use. The extent of advertising and publicity associated with the HELLMANN'S Marks is such that it is well known throughout a substantial portion of the United States.

66.     Unilever's long, continuous, and extensive use of the HELLMANN'S Marks has caused the HELLMANN'S Marks to become famous, as defined under 15 U.S.C. § 1125(c).

67.     Defendants' use of the HELLMANN'S Marks began on or around April 2022, well after Unilever's HELLMANN'S Marks became famous. Defendants are passing off non-genuine product as Unilever's and distributing Counterfeit Products in New York at other retailers and grocers in the New York City region.

68.     Defendants' use of the HELLMANN'S Marks dilutes the distinctive value of Unilever's HELLMANN'S Marks by lessening the capacity of Unilever to identify and distinguish its goods and services from those of others.

69.     Defendants' unknown health and food safety measures during production and distribution of a sought-after food product endangers public health.

70.     Defendants' precarious use of the HELLMANN'S Marks at a time of pandemic and war-related supply chain concerns puts Unilever's brand and goodwill in danger.

71.     Defendants' deliberate and willful violation of Unilever's rights in the HELLMANN'S Marks have caused and will continue to cause damages to Unilever, as well as to the reputation associated with Unilever's HELLMANN'S Marks.

72.     Unilever has no adequate remedy at law. Unilever has suffered, and continues to suffer, irreparable harm such that Unilever is entitled to injunctive relief.

18

73.     Accordingly, Defendants' conduct constitutes dilution pursuant to 15 U.S.C. § 1125.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### TRADEMARK INFRINGEMENT
### (NEW YORK COMMON LAW)

74.     Unilever repeats and incorporates by reference herein its allegations contained in paragraphs 1-71 of this Complaint.

75.     Defendants' acts and conduct complained of herein constitute trademark infringement in violation of New York common law.

76.     Unilever has no adequate remedy at law.  Unilever has suffered, and continues to suffer, irreparable harm such that Unilever is entitled to injunctive relief.

## FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### UNFAIR COMPETITION AND PASSING OFF
### (NEW YORK COMMON LAW)

77.     Unilever repeats and incorporates by reference herein its allegations contained in paragraphs 1-74 of this Complaint.

78.     Defendants' acts and conduct complained of herein constitute unfair competition and passing off in violation of New York common law.

79.     Unilever has no adequate remedy at law.  Unilever has suffered, and continues to suffer, irreparable harm such that Unilever is entitled to injunctive relief.

## SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### DILUTION
### (NEW YORK GENERAL BUSINESS LAW § 360-l)

80.     Unilever repeats and incorporates by reference herein its allegations contained in paragraphs 1-77 of this Complaint.

81.     Upon information and belief, Defendants' acts and conduct complained of herein constitute dilution and injury to business reputation in violation of GBL § 360-l.

19

82.    Unilever has no adequate remedy at law.  Unilever has suffered, and continues to suffer, irreparable harm such that Unilever is entitled to injunctive relief.

## SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
## UNJUST ENRICHMENT

83.    Unilever repeats and incorporates by reference herein its allegations contained in paragraphs 1-80 of this Complaint.

84.    Since at least as early as April 2022, Defendants have been selling Counterfeit Products without authorization using a false designation—Unilever's HELLMANN'S Marks.

85.    As a result of the Defendants' aforementioned unlawful acts, Defendants have had a financial benefit conferred upon them and are thereby unjustly enriched.  It is inequitable for the Defendants to retain those benefits, and they should be disgorged of any profits.

## PRAYER FOR RELIEF

WHEREFORE, Unilever prays for judgment against Defendants, inclusive, and each of them as follows:

1.    That Defendants, their affiliates, officers, agents, servants, employees, attorneys, owners, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.    using the HELLMANN'S Marks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a Genuine HELLMANN'S Product or is not authorized by Unilever to be sold in connection with the HELLMANN'S Marks;

b.      passing off, inducing, or enabling others to sell or pass off any product

as a Genuine HELLMANN'S Product or any other product produced

by Unilever that is not Unilever's or not produced under the

authorization, control, or supervision of Unilever and approved by

Unilever for sale under the HELLMANN'S Marks;

c.      committing any acts calculated to cause consumers to believe that

Defendants' Counterfeit Products are those sold under the

authorization, control, or supervision of Unilever, or are sponsored by,

approved by, or otherwise connected with Unilever;

d.      further infringing the HELLMANN'S Marks and damaging Unilever's

goodwill;

e.      otherwise competing unfairly with Unilever in any manner;

f.      shipping, delivering, holding for sale, transferring, or otherwise

moving, storing, distributing, returning, or otherwise disposing of, in

any manner, products or inventory not manufactured by or for

Unilever, nor authorized by Unilever to be sold or offered for sale, and

which bear any Unilever trademark, including the HELLMANN'S

Marks or any reproductions, counterfeit copies, or colorable imitations

thereof; and

g.      operating stores or distribution centers that are involved with the

distribution, marketing, advertising, offering for sale, or sale of any

product bearing the HELLMANN'S Marks or any reproduction,

counterfeit copy or colorable imitation thereof that is not a Genuine

HELLMANN'S Product or not authorized by Unilever to be sold in

connection with the HELLMANN'S Marks.

2.      For an award of Defendants' profits and Unilever's damages under 15 U.S.C. §

1117(a), enhanced and treble damages including for willfully and intentionally using a mark

or designation, knowing such mark or designation is a counterfeit mark in violation of 15

U.S.C. § 1114(1)(a);

3.      In the alternative to Defendants' profits and Unilever's actual damages,

enhanced discretionary damages, and treble damages for willful use of a counterfeit mark in

connection with the sale, offering for sale, or distribution of goods or services, for statutory

damages under 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per

counterfeit mark per type of goods or services sold, offered for sale or distributed, as the

Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

4.      For an award of Defendants' profits and Unilever's damages in an amount to

be proven at trial for willful trademark infringement of Unilever's federally registered

HELLMANN'S Marks, and such other compensatory damages as the Court determines to be

fair and appropriate pursuant to 15 U.S.C. § 1117(a);

5.      For an award of Defendants' profits and Unilever's damages pursuant to 15

U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as

the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false

designation of origin and unfair competition under 15 U.S.C. §1125(a);

6.      For an award of damages to be proven at trial for common law unfair

competition;

7.      For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Unilever for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising, and promotional materials and any other materials in the possession, custody, or control of such distributors and retailers that infringe any of Unilever's HELLMANN'S Marks, or bear any marks that are confusingly similar to the HELLMANN'S Marks;

8.      For an order of the Court requiring that Defendants deliver up for destruction to Unilever any and all Counterfeit Products and any and all packaging, labels, tags, advertising, and promotional materials and any other materials in the possession, custody, or control of Defendants that infringe any of Unilever's HELLMANN'S Marks, or bear any marks that are confusingly similar to the HELLMANN'S Marks pursuant to 15 U.S.C. § 1118;

9.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains, and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale, and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

10.     For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Unilever;

11.     For an award of exemplary or punitive damages in an amount to be determined by the Court;

12.     For Unilever's attorneys' fees;

23

13.    For all costs of suit; and

14.    For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Unilever respectfully demands a trial by jury on all claims.

Dated:  May 5, 2022                    Respectfully submitted,

                                       William P. Deni, Jr.
                                       J. Brugh Lower
                                       **GIBBONS P.C.**
                                       One Pennsylvania Plaza, 37th Floor
                                       New York, New York 10119-3701
                                       Tel: 212-613-2000
                                       Fax: 212-290-2018
                                       wdeni@gibbonslaw.com
                                       jlower@gibbonslaw.com

                                       Anna Naydonov (*pro hac vice* to be filed)
                                       Mary Kate Brennan
                                       Spencer K. Beall (*pro hac vice* to be filed)
                                       Rosie Norwood-Kelly (*pro hac vice* to be filed)
                                       **FINNEGAN, HENDERSON, FARABOW,**
                                          **GARRETT & DUNNER, LLP**
                                       901 New York Avenue, NW
                                       Washington, DC 20001-4413
                                       Tel: (202) 408-4000
                                       Fax: (202) 408-4400

                                       *Attorneys for Plaintiff*
                                       *Conopco, Inc. d/b/a Unilever*

24