**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONOPCO, INC. d/b/a UNILEVER, | **Case No. 22 Civ. 3480 (AT)** |
| *Plaintiff*, | |
| v. | ***EX PARTE* TEMPORARY RESTRAINING ORDER; ORDER AUTHORIZING *EX PARTE* SEIZURE; ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION; AND ORDER ALLOWING EXPEDITED DISCOVERY** |
| 2026 THIRD REALTY, LLC, HAE HEE KIM, COURTNEY HAEJIN KIM, DANIEL HUNGSIK KIM, BRYANT KIM, K & K FOOTWEAR, INC., AND JOHN DOES 1-10, inclusive, | |
| *Defendants*. | <u>**FILED UNDER SEAL**</u> |

On April 29, 2021, Plaintiff, Conopco, Inc. d/b/a/ Unilever ("Unilever"), commenced this action[1] under seal, and sought the entry of an *ex parte* temporary restraining order (the "TRO"), an order authorizing an *ex parte* seizure of counterfeit goods under 15 U.S.C. § 1116(d), an order to show cause for a preliminary injunction, and an order permitting expedited discovery (collectively, the "TRO Application"). Unilever also filed the Declarations of Benjamin Murphy ("Murphy Decl."), Melanie Luca ("Luca Decl."), Mary Kate Brennan ("Brennan Decl.") and Stephen Ward ("Ward Decl."), and exhibits to each, in support of the TRO application. Unilever's motion is GRANTED, subject to the following findings of fact and conclusions of law.[2]

---

[1] Where a defined term is referenced but not defined in this order, the defined term should be understood as it is defined in the Complaint.

[2] The Court makes the following findings of fact and conclusions of law based on Plaintiff's submissions to date, without prejudice to any subsequent findings made after a full preliminary injunction hearing. *See Energybrands, Inc. v. Beverage Mktg. USA, Inc.,* No. 2 Civ. 3227, 2002 WL 826814, at *1 (S.D.N.Y. May 1, 2002).

**FINDINGS OF FACT**

1.       Unilever is the owner of several valid and subsisting trademark registrations for the HELLMANN'S trademarks and logos, which appear on the Principal Register in the United States Patent and Trademark Office ("PTO"), and alone or in combination on all authentic HELLMANN'S-branded mayonnaise ("Genuine HELLMANN'S Products"), including:

| Mark | Registration No. | Date Registered | Goods/Services |
| --- | --- | --- | --- |
| HELLMANN'S (Stylized)  | 0514280 | August 23, 1949 | Mayonnaise, salad dressings, sandwich spread, and tartar sauce |
|  | 1017067 | July 29, 1975 | Salad dressing, mayonnaise, mayonnaise dressing, and relish sandwich spread; tartar sauce |
| BLUE RIBBON HELLMANN'S REAL MAYONNAISE  | 1236589 | May 3, 1983 | Mayonnaise |
| BRING OUT THE BEST | 1478873 | March 1, 1988 | Mayonnaise |
| HELLMANN'S 'BRING OUT THE BEST'  | 4721213 | April 14, 2015 | Mayonnaise and salad dressings |
| Richard Hellmann (Stylized)  | 5514321 | July 10, 2018 | Mayonnaise; tartar sauce; sandwich spread comprised primarily of mayonnaise, ketchup, relish, |

| | | | mustard or tartar sauce |
|---|---|---|---|
| HELLMANN'S EST. 1913  | 5869191 | September 24, 2019 | Mayonnaise; dressings for salad; ketchup; tomato sauce; sauces; relish; mustard; vinegar. |
| HELLMANN'S EST. 1913  | 6357670 | May 18, 2021 | Oils and fats for food. |

(hereinafter, the "HELLMANN'S Marks").  Murphy Decl. ¶ 6, Ex. 1.

2.     Since at least 1926, Unilever (including through predecessors) has used the HELLMANN'S brand in connection with mayonnaise and related food products in the United States.  *Id.* ¶ 3.  As a result of billions of dollars in sales, advertising, and promotion, the HELLMAN'S Marks are well-known.  *Id.* ¶ 4.

3.     Defendants allegedly market and sell Counterfeit Products without authorization. Specifically, on or around April 11, 2022, members of the public noticed large quantities of Counterfeit Products visible through the windows of what appears to be an empty storefront located at 2026 3rd Avenue New York, NY 10029-2886 ("Location").  *Id.*  ¶ 7; Ward Decl. ¶ 3.

4.     The Counterfeit Products have attracted attention on social media, which culminated in a NEWSWEEK article commenting on "the mysterious mayonnaise haul . . . in East Harlem."[3]  Murphy Decl. ¶¶ 8–9, Exh. 2; Ward Decl. ¶ 3(a).

---

[3] Rebecca Flood, *'Mayo Clinic': Questions Surround NYC Building Overflowing With Mayonnaise*, NEWSWEEK (Apr. 13, 2022), https://www.newsweek.com/new-york-building-overflowing-mayonnaise-questions-1697647.

5.      In response to the social media and press coverage, Benjamin Murphy, a Business Development Manager at Unilever, visited the Location on April 18, 2022.  Murphy Decl. ¶¶ 2, 10; Luca Decl. ¶ 4; Ward Decl. ¶ 3(b).

6.      The Counterfeit Products were visible through the glass door and windows at the Location.  Murphy Decl. ¶ 10.

7.      Photographs taken by Mr. Murphy on April 18, 2022, are shown below:



*Id*. Ex. 3.

8.      Unilever then conducted a detailed visual inspection and analysis of the Counterfeit Products based on the photographs its employee took at the Location, and concluded the products are likely counterfeits, based on the following differences:

a.  Unilever does not use the batch code format featured on the Counterfeit Products, below:



Instead, Unilever uses the following unique format to identify the date, plant, production line, and time on the Genuine HELLMANN'S Products:



b.  The batch code expiration date appears to be pre-printed on the label of the Counterfeit Products; Unilever does not imprint the batch code date on the labels of its Genuine HELLMANN'S Products, rather the date is later laser coded on to the label during production, at the time the product is packaged at a plant.

c.  Genuine HELLMANN'S Products do not use the type of pressure-sensitive labels that appear on the Infringing Products (shown above).

d.  Unlike the Genuine HELLMANN'S Products, the shrink wrap around the case of the Counterfeit Products appeared loose, not properly sealed, and likely taped over with package tape:



The shrink wrap on the Genuine HELLMANN'S Products goes through the heat tunnel process to ensure that the shrink wrap is attached tightly to the jars to secure them when transporting the product.  By contrast, the shrink wrap on the Counterfeit Products is loose.

e. The graphic on the following Counterfeit Product label differs from the graphic on the Genuine HELLMANN'S Products:



**Counterfeit Product          Genuine HELLMANN's Product**

Specifically, the Genuine HELMMANN'S Product label features an image of the eggs on a yellow background.  By contrast, the Counterfeit Product label features an image of the eggs on a blue background, and the image also appears to be upside down.  Murphy Decl. ¶¶ 10–13; Luca Decl. ¶ 4; Ward Decl. ¶ 3(c).

9. Unilever then engaged Polaris Corporate Risk Management LLC ("Polaris") to conduct an investigation.  Ward Decl. ¶¶ 3–4.

10. Starting on April 23, 2022, Polaris (1) conducted an in-person inspection of the Location, and (2) researched any individuals that may be affiliated with the Location ("Polaris Investigation").  *Id.*  The Polaris Investigation revealed the following:

a. The Location is owned by 2026 Third Realty, LLC in the names of individuals Hae Hee Kim and Courtney Haejin Kim.  Both women reside at 152 Delaware Ave., Haworth, New Jersey 07641 ("New Jersey Address").  *Id.* ¶ 5.  Two other individuals, Daniel

Hungski Kim, and Bryant Kim, are also associated with both the Location and the New Jersey Address.  *Id.* ¶¶ 6–7.

11.     On April 23, 2022, a Polaris investigator visited the Location, but found that a metal gate had been pulled down over the entrance to the store, limiting visibility and access.  *Id.* ¶ 9.

12.     The investigator then approached several nearby residents.  *Id.* ¶ 10.  Those residents disclosed that the gate concealed numerous containers of Counterfeit Products which they claimed to have observed when the gate was previously opened.  *Id.*  They further confirmed that the storefront had garnered interest from passersby, who would capture images of the Counterfeit Products.  *Id.*

13.     Because Mr. Murphy was denied entrance to the Location (Murphy Decl. ¶¶ 11, 13) and the gate was closed when Unilever's investigator visited the Location on April 23, 2022 (Ward Decl. ¶¶ 10–11), Unilever was not able to secure a physical sample or take additional photographs of the Counterfeit Products.  But, Unilever believes there may be additional differences, including as to the contents and quality of the products, which potentially pose serious health and safety threats to the public).  *See* Murphy Decl. ¶¶ 13–17; Luca Decl. ¶¶ 4–9.

14.     On April 25, 2022, pursuant to 15 U.S.C. § 1116(d)(2), Unilever's counsel first contacted the United States Attorney's Office for the Southern District of New York (the "Office") to notify the Office of the planned TRO Application.  Brennan Decl. ¶ 3. On April 29, 2022, Unilever's counsel once again contacted the Office and spoke with Deputy Michael Gonzalez of the United States Marshals Service, to notify the Office that the TRO application had been filed.  *Id.* ¶ 4.

15.     Rule 65(b) of the Federal Rules of Civil Procedure authorizes courts to issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition.  FED. R. CIV. P. 65(b).

16.     The standard for granting a temporary TRO and a preliminary injunction are synonymous.  *3M Co v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020). A party seeking to obtain either relief must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of an injunction; (3) that the balance of hardships favors the plaintiff; and (4) that the public interest will not be disserved if an injunction issues. *Id*.

17.     If a party requests an *ex parte* TRO, the "Court must also determine whether '(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damages will result to the movant before the adverse party can be heard in opposition,' and '(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.'" *Cengage Learning, Inc. v. Doe 1*, No. 18 Civ. 403, 2018 WL 2244461, at *1 (S.D.N.Y. Jan. 17, 2018) (quoting Fed. R. Civ. P. 65(b)(1)).

18.     The Court finds that Unilever is likely to succeed on the merits of its claims.  The Lanham Act provides that a defendant is liable for trademark infringement and counterfeiting if a defendant, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use[s] is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1).  Courts examine: (1) whether the plaintiff's mark is entitled to protection and (2) whether defendant's use of the mark is likely to cause

confusion.  *See, e.g.*, *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016); *Spin Master Ltd., v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 420 (S.D.N.Y. 2018); *BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*, 408 F. Supp. 3d 508, 520 (S.D.N.Y. 2019).

19.    Unilever satisfies both prongs. First, Unilever's HELLMANN'S Marks are registered with the United States Patent and Trademark Office on the Principal Register, are valid and subsisting, and many are incontestable.  Murphy Decl. ¶ 6.  The registrations for the HELLMANN'S Marks are *prima facie* evidence of their validity and of Unilever's exclusive right to use the HELLMANN'S Marks under 15 U.S.C. § 1057(b).  From Unilever's longstanding use of the HELLMANN'S Marks and stringent quality control testing, the HELLMANN'S Marks signify to consumers that the products come from Unilever and are manufactured to the highest quality standards.  *Id.* ¶ 5.  Second, Defendants—who have not been licensed or authorized by Unilever to use the HELLMANN'S Marks or distribute Unilever products—are engaged in unauthorized use of the HELLMANN'S Marks to confuse and deceive the consuming public into thinking that Defendants' Counterfeit Products are manufactured by or emanate from Unilever, which is sufficient to establish likelihood of confusion.  *See Spin Master*, 325 F. Supp. 3d at 422 ("The sale of counterfeit goods is sufficient use to establish liability.").

20.    The same test is required to establish likelihood of success on the merits of claims for unfair competition and false designation of origin.  *Id.* at 423.  To prove false designation of origin and unfair competition under 15 U.S.C. § 1125(a), a plaintiff must demonstrate: (1) that it has a valid, protectable trademark; and (2) a likelihood of confusion to the origin of the plaintiff's products.  *Salvatore Ferragamo S.p.A. v. Does 1-56*, No. 18 Civ. 12096, 2020 WL 774237, at *2 (S.D.N.Y. Feb. 18, 2020).  Because the HELLMANN'S Marks are registered

marks, and Unilever has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants, as shown above, a likelihood of success also exists on the merits for Unilever's false designation of origin and unfair competition claims.

21.     A plaintiff who has demonstrated a likelihood of success on the merits of a Lanham Act claim also demonstrates a likelihood of success on the merits of an unfair competition claim based on New York common law as long as the plaintiff can show that the defendants acted in bad faith.  *See id.* at *4.  Because Unilever has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants, bad faith is presumed.  *See id.*

22.     Unilever has also demonstrated a likelihood of success on the merits on its dilution claims under both federal and New York trademark law.  Both recognize two categories of dilution claims: dilution by blurring and dilution by tarnishment.  Dilution by blurring refers to the "gradual diminishment of a famous mark's acquired ability to clearly and unmistakably distinguish one source through unauthorized use."  *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 458 (S.D.N.Y. 2017).  A claim of dilution by tarnishment "arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product*." Id.* at 460 (citing *Deere & Co. v. MTD Prods., Inc.,* 41 F.3d 39, 43 (2d Cir. 1994)).  Federal trademark dilution claims require showing that "(1) the mark is famous; (2) defendant's use of the mark is made in commerce; (3) the defendant used the mark after the mark is famous; and (4) the defendant's use of the mark is likely to dilute the quality of the mark by blurring or tarnishment." *DigitALB, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 557 (S.D.N.Y. 2018) (citation omitted).

The legal standard for New York trademark dilution claims is "essentially the same." *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc*., 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002).

23.     Unilever satisfies each prong of the dilution analysis.  First, the HELLMANN'S Marks are famous.  Second, there is no question that Defendants' distribution or sale of the Counterfeit Products constitutes commercial use.  Third, because Unilever and its predecessors have used the HELLMANN'S Marks in connection with mayonnaise and related food products in the United States for many decades, *see* Murphy Decl. ¶¶ 3–4, the HELLMANN'S Marks became famous prior to Defendants' commercial use. Fourth, Defendants' use of the HELLMANN'S Marks is likely to dilute the quality of the HELLMANN'S Marks by blurring or tarnishment because the sale and distribution of counterfeit goods results in dilution by blurring and tarnishment as a matter of law.  *See Burberry Ltd. v. Euro Moda, Inc.*, No. 08 Civ. 5781, 2009 WL 1675080, at *13–15 (S.D.N.Y. June 10, 2009).

24.     The Court finds that Defendants' alleged distribution and sale of the Counterfeit Products may pose a substantial risk of harm to the health and safety of consumers, and create a false association between these products and Unilever.  Entry of the TRO is appropriate, therefore, because it would halt Defendants' unlawful activities, and mitigate risks to consumer safety until a hearing can be held.  In addition, in the absence of an *ex parte* TRO, Defendants may move their operations, hide evidence of their activities, or transfer their assets outside the United States. *See, e.g., Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, No. 21 Civ. 370, 2021 WL 1249631, at *2 (S.D.N.Y. Apr. 5, 2021); *Barefoot Contessa Pantry, LLC v. Aqua Star (USA) Co.*, No. 15 Civ. 1092, 2015 WL 845711, at *8 (S.D.N.Y. Feb. 26, 2015).

25.     Unilever has also established that, because the Counterfeit Products are visually indistinguishable from genuine HELLMANN's Products to ordinary consumers, *see* Murphy Decl. ¶¶ 7–9; Luca Decl. ¶ 4; Ward Decl. ¶ 3, Defendants' sale and distribution of the Counterfeit Products will lead to a loss of control over the HELLMANN'S Marks and damage the goodwill that Unilever has developed in its HELLMANN'S brand, causing Unilever immediate and irreparable harm.  *See Tommy Hilfiger Licensing, Inc. v. Tee's Ave., Inc.*, 924 F. Supp. 17, 21 (S.D.N.Y. 1996).

26.     Defendants are engaging in illegal sales of counterfeit food products, and as such, Defendant will not suffer any legally cognizable harm from the requested seizure.  Unilever's application for *ex parte* seizure is directed to the Counterfeit Products and documentary evidence of Defendants' unlawful activities, and Defendants have no legitimate interest in these items. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012).  For its part, Unilever will suffer immediate and irreparable harm in the absence of emergency relief because (1) Unilever's reputation will suffer if consumers become ill from consuming the Counterfeit Products; (2) Unilever has a legitimate interest in protecting the goodwill associated with its HELLMANN'S Marks, and (3) Unilever will be unable to ascertain the scope of damages incurred from Defendants' unlawful activities if the Counterfeit Products and other evidence of counterfeiting is hidden or destroyed.  Murphy Decl. ¶¶ 17–18, 21–23; Luca Decl. ¶¶ 8–9, 12–13.

27.     In addition, Unilever has satisfied the statutory criteria under 15 U.S.C. § 1116(d)(4)(B) that must be met before the Court may grant an *ex parte* order of seizure. *Playboy Enters. Int'l v. Playboy Enters.*, No. 21 Civ. 6419, 2021 WL 3593357, at *1 (S.D.N.Y. Aug. 13, 2021).  Specifically:

i.   For the reasons above, an order other than an *ex parte* seizure order is not adequate to achieve the purposes of 15 U.S.C. § 1114;

ii.   Unilever has not publicized the requested seizure;

iii.   Unilever is likely to succeed in showing Defendants used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;

iv.   An immediate and irreparable injury will occur if such seizure is not ordered;

v.   The Counterfeit Goods to be seized will be located at the place identified in the application;

vi.   The harm to Unilever of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered; and

vii.   Defendants or persons acting in concert with such persons, would destroy, move, hide, or otherwise make such matter inaccessible to the Court, if Unilever were to proceed on notice to such person.

28.     The Court also finds good cause to grant Unilever's request for expedited discovery in its discretion, to aid identification of unknown defendants, additional locations of counterfeit products and related records, and bank accounts used for the counterfeit and/or infringing activities.  *See* Fed. R. Civ. P. 26(b)(2); *adMarketplace, Inc. v. Tee Support Inc*., No. 13 Civ. 5635, 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013).

29.     Courts have "wide discretion" on whether to require the posting of a security upon issuance of a temporary restraining order or preliminary injunction, and the amount thereof. *See Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996); Fed. R. Civ. P. 65(c).  In light of the strong evidence of counterfeiting, infringement, and unfair competition, the Court finds that a bond of **$ 5,000** is appropriate in this instance.

**ORDER**

Based on the foregoing facts and conclusions of law, Unilever's Application is hereby

GRANTED as follows:

**_EX PARTE_ TEMPORARY RESTRAINING ORDER**

**IT IS HEREBY ORDERED THAT**, pending the above-referenced hearing, or such

other date as may be fixed by the Court, Defendants 2026 Third Realty, LLC, Hae Hee Kim,

Courtney Haejin Kim, Daniel Hungsik Kim, Bryant Kim, K & K Footwear, Inc. and John Does

1-10, inclusive (collectively, "Defendants"), their affiliates, subsidiaries, parents, and their respective

officers, agents, servants, attorneys, and employees, and all persons and entities in active concert

or participation with them are hereby immediately **TEMPORARILY RESTRAINED** from:

1.      Using any of the following HELLMANN'S marks and/or any other marks

comprised of or incorporating HELLMANN'S or the ribbon logo (individually and collectively,

"HELLMANN'S Marks") or any other Unilever trademarks, names, or designations in

connection with the manufacture, sale, offer for sale, distribution, or advertisement of any

products:

| Mark | Registration No. | Date Registered | Goods/Services |
|---|---|---|---|
| HELLMANN'S (Stylized)  | 0514280 | August 23, 1949 | Mayonnaise, salad dressings, sandwich spread, and tartar sauce |
|  | 1017067 | July 29, 1975 | Salad dressing, mayonnaise, mayonnaise dressing, and relish sandwich spread; tartar sauce |
| BLUE RIBBON HELLMANN'S REAL MAYONNAISE | 1236589 | May 3, 1983 | Mayonnaise |

| | | | |
|---|---|---|---|
|  | | | |
| BRING OUT THE BEST | 1478873 | March 1, 1988 | Mayonnaise |
| HELLMANN'S 'BRING OUT THE BEST'   | 4721213 | April 14, 2015 | Mayonnaise and salad dressings |
| Richard Hellmann (Stylized)   | 5514321 | July 10, 2018 | Mayonnaise; tartar sauce; sandwich spread comprised primarily of mayonnaise, ketchup, relish, mustard or tartar sauce |
| HELLMANN'S EST. 1913   | 5869191 | September 24, 2019 | Mayonnaise; dressings for salad; ketchup; tomato sauce; sauces; relish; mustard; vinegar. |
| HELLMANN'S EST. 1913   | 6357670 | May 18, 2021 | Oils and fats for food. |

2.      Committing any acts calculated to cause purchasers to believe that counterfeit or infringing HELLMANN'S® or Unilever products ("Counterfeit Products") are sold under the control or supervision of Unilever, when they are not;

3.      Selling, passing off, inducing, or enabling others to sell or pass off any products— including without limitation HELLMANN'S® mayonnaise—as Unilever goods or as produced

15

by or for Unilever, which are not Unilever's genuine goods, or are not sold under the control or supervision of Unilever;

4.      Directly or indirectly importing, manufacturing, distributing, advertising, promoting, making, purchasing, offering for sale or selling Counterfeit Products, or any counterfeit or infringing packaging for the same;

5.      Using any reproduction, counterfeit, copy or colorable imitation of any of the HELLMANN'S Marks in connection with the publicity, promotion, sale, or advertising of any products;

6.      Affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as Unilever goods and from offering such goods in commerce;

7.      Diluting any of the HELLMANN'S Marks or any other Unilever trademarks;

8.      Interfering with Unilever's contracts and/or business relationships with any customers or potential customers, licensees, or potential licensees;

9.      Destroying and/or failing to preserve any records related to the manufacture, advertising, receipt, importation, shipment, purchase, sale, offer for sale, or distribution of any products either purporting to be Unilever products or products using any of the HELLMANN'S Marks and/or any other Unilever trademarks or copyrights;

10.      Assisting, inducing, enabling, aiding, or abetting any other person or business entity engaging in or performing any of the activities referred in subparagraphs 1-9 above; and

11.      Interfering with any federal, state, or local law enforcement officer(s), who will execute the provisions of the *ex parte* seizure order detailed below, and/or any representative, agent, independent contractor, or designee of Unilever (including but not limited to individuals

trained to detect counterfeit HELLMANN'S® mayonnaise, quality control personnel, supply chain personnel, packaging personnel, and/or forensics experts) who may assist such law enforcement officer(s) and/or other federal or local authorities in executing the provisions of the seizure order.

**IT IS FURTHER ORDERED THAT**, during the pendency of this TRO, Unilever shall be authorized to inspect any products offered or sold by Defendants that bear the HELLMANN'S Marks and/or any other Unilever trademarks or copyrights for the purpose of determining whether they are genuine or counterfeit/infringing, and thus to confirm whether Defendants are complying with this TRO.

**IT IS FURTHER ORDERED** that upon two (2) business days' written notice to the Court and Unilever's counsel, any Defendant or affected third party may, upon proper showing, appear and move for dissolution or modification of the provisions of this order.

## ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

On **May 13, 2022**, at **11:00 a.m.**, Defendants shall appear before this Court, at a telephonic hearing, and show cause why a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, should not be issued enjoining them, their agents, servants, employees, officers, and all other persons and entities in active concert or participation with them, pending the final hearing and determination of this action, from:

1.      Committing any acts calculated to cause purchasers to believe that Counterfeit Products are sold under the control or supervision of Unilever, when they are not;

2.      Selling, passing off, inducing, or enabling others to sell or pass off any products—including without limitation HELLMANN'S® mayonnaise—as Unilever goods or as produced

by or for Unilever, which are not Unilever's genuine goods, or are not sold under the control or supervision of Unilever;

3.      Directly or indirectly importing, manufacturing, distributing, advertising, promoting, making, purchasing, offering for sale or selling any Counterfeit Products, or any counterfeit or infringing packaging for the same;

4.      Infringing any HELLMANN'S Marks or any other Unilever trademarks, including using any trademark, logo, trade name, or product packaging similar to the HELLMANN'S Marks and product packaging in connection with the distribution, sale, or offer for sale of any product or service without prior authorization from Unilever;

5.      Using any reproduction, counterfeit, copy or colorable imitation of any of the HELLMANN'S Marks in connection with the publicity, promotion, sale, or advertising of any products;

6.      Affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being Unilever goods and from offering such goods in commerce;

7.      Diluting any of the HELLMANN'S Marks or any other Unilever trademarks;

8.      Interfering with Unilever's contracts and/or business relationships with any of Unilever's customers or potential customers, licensees, or potential licensees;

9.      Destroying any records related to the manufacture, advertising, receipt, importation, shipment, purchase, sale, offer for sale, or distribution of any Counterfeit Products;

10.     Assisting, inducing, enabling, aiding, or abetting any other person or business entity engaging in or performing any of the activities referred in subparagraphs 1-9 above.

18

At the time of the conference, the parties are directed to dial 888-398-2342 or 215-861-0674, and enter access code 5598827.

## ORDER GRANTING *EX PARTE* SEIZURE PURSUANT TO 15 U.S.C. § 1116(d)

**IT IS FURTHER ORDERED THAT**, pursuant to 15 U.S.C. § 1116(d), the U.S. Marshals Service, the New York City Police Department ("NYPD") or one or more of their deputies (or local or federal law enforcement officers having jurisdiction), in either case assisted by one or more attorneys, private investigators, employees, computer forensics experts, or agents of Unilever, are directed and permitted to search, seize, copy, and sequester at any time, but no later than **seven (7) days** from the date of this order, the following items in the possession, custody or control of Defendants:

1.     All Counterfeit Products;

2.     All existing inventories of HELLMANN'S® products, in order to distinguish Counterfeit Products from genuine products (if any); and

3.     All records, documents, invoices, correspondence, emails, text or other electronics messages, security camera and/or other footage, chats, voicemails, bank records, computers, mobile devices, disks, or other electronic storage media, servers, checks, wire transfers, books of account, receipts, or other documentation relating or referring in any manner to the distribution, sale, offer for sale, importation, manufacture, advertising, or promotion of any Counterfeit Products and/or genuine HELLMANN'S® or Unilever products (if any) that the Defendants distributed, sold, or offered for sale, whether such information is stored in a written or computerized form and all telephone and address directories.  The seizure shall be from the following persons or entities during the hours of 8:00 a.m. to 8:00 p.m.:

    a.  2026 Third Realty, LLC, Hae Hee Kim, Courtney Haejin Kim, Daniel Hungsik Kim, Bryant Kim, K & K Footwear, Inc., and John Does 1-10, inclusive, at 2026 3rd Avenue New York, NY 10029-2886;

    b.  2026 Third Realty, LLC, Hae Hee Kim, Courtney Haejin Kim, Daniel Hungsik Kim, Bryant Kim, K & K Footwear, Inc., and John Does 1-10, inclusive, at 1992 3rd Avenue, New York, NY 10029; and

    c.  2026 Third Realty, LLC, Hae Hee Kim, Courtney Haejin Kim, Daniel Hungsik Kim, Bryant Kim, K & K Footwear, Inc., and John Does 1-10, inclusive, at 152 Delaware Ave., Haworth, New Jersey 07641 (together, the "Initial Seizure Locations").

Pursuant to 15 U.S.C. § 1116(d)(9), service of a copy of this order must be made by the relevant federal, state, or local law enforcement officer, and only upon making such service, may that officer arry out the seizure under the order.

**IT IS FURTHER ORDERED THAT** all electronic data, including, but not limited to, emails, chats, texts, phone records, video security footage, invoices, bills of lading, and accounting software shall be preserved, pending further order of this Court.

**IT IS FURTHER ORDERED THAT** all such seized materials, products, and records shall be delivered to Unilever's attorneys or private investigators or agents and Unilever's attorneys or private investigators or agents shall act as substitute custodians for the Court, subject to the previously-noted sealing condition, and an inventory of the materials and records shall be provided to the NYPD or U.S. Marshals Service (or other law enforcement officers) and shall be filed with the Court by Unilever's attorneys within **three days** from the date of the seizure's execution, pending further order of this Court.

20

**IT IS FURTHER ORDERED THAT** Unilever, on whose behalf the Court issues this order, will act as substitute custodian of any and all items seized/secured pursuant to this order and shall indemnify and hold harmless the NYPD or U.S. Marshals Service (or other law enforcement agencies and their employees) from any and all claims, asserted in any Court tribunal, arising from any acts, incidents, or occurrences in connection with the seizure and possession of Defendants' property, including any third party.

**IT IS FURTHER ORDERED THAT**, to the extent necessary to effect the seizure and sequestration ordered herein, the NYPD or U.S. Marshals Service (or other law enforcement officers) may use such force as may be reasonably necessary, including breaking any locks, to enter the premises of, or vehicle of, or facility in the possession, custody, or control of Defendants, and to inspect the contents of any rooms, closets, cabinets, vehicles, containers, desks, desktop computers, laptops, smart phones, security and/or other cameras, documents and/or any other notes, recordings, or records located on the premises or any storage rooms located within the same complex as the premises, and known to be within the possession, custody, or control of Defendants.

**IT IS FURTHER ORDERED THAT**, to the extent that the materials and records are to be moved and/or stored, Unilever is responsible for the transportation involved in the removal and sequestration of any materials and records seized from the premises and must provide the NYPD or U.S. Marshals Service (or other law enforcement officers) with written proof that the storage fees have been paid and adequate insurance against loss or damage has been obtained as evidenced by an insurance certificate.

**IT IS FURTHER ORDERED THAT** anyone interfering with the execution of this order may be subject to arrest by the law enforcement officers.

21

**IT IS FURTHER ORDERED THAT** Unilever's attorneys, private investigators, forensics experts, and/or employees or agents may accompany and assist the NYPD or U.S. Marshals Service (or other law enforcement officers) in determining whether an item is covered by the preceding paragraphs and the NYPD or U.S. Marshals Service (or other law enforcement officers) shall follow such attorneys, private investigators, forensics experts, and/or employees or agents' reasonable determinations.

**IT IS FURTHER ORDERED THAT**, during the seizure authorized herein, each person present who is a Defendant, or employed or affiliated with Defendants, shall, upon request by a law enforcement officer, provide a driver's license or other form of identification.

**IT IS FURTHER ORDERED THAT** during the seizure authorized herein, each person present who is a Defendant, or employed by Defendants, shall—upon request by a law enforcement officer—provide passwords, access codes, and any other log-in information for all electronic devices and files, including, without limitation computers, tablets, and mobile phones.

**IT IS FURTHER ORDERED THAT** during the seizure authorized herein, each person present who is a Defendant, or employed by Defendants, shall—upon request by a law enforcement officer or one or more attorneys, private investigators, forensics experts, employees, or agents of Unilever assisting in the seizure—provide assistance to identify and locate relevant documents and information concerning the location, distribution, sale, offer for sale, importation, manufacture, distribution, advertisement, or promotion of any Counterfeit Products that Defendants have manufactured, imported, exported, distributed, sold, or offered for sale.

**IT IS FURTHER ORDERED THAT** Unilever's attorneys may be accompanied by private investigators, computer technicians, and/or forensics experts to obtain copies of

22

documents to be seized that are stored in electronic form, and Unilever's representatives may also bring with them still camera or video camera operators to record the seizure.

**IT IS FURTHER ORDERED THAT** Unilever's representatives shall promptly inspect the items seized, and if any items are found to be outside the scope of this order, such items are to be returned to Defendants within seven (7) days of the date the seizure is conducted pursuant to this order.

**IT IS FURTHER ORDERED THAT** Unilever shall be responsible to the NYPD, the U.S. Marshals Service, or other law enforcement officers, for all fees and charges incurred in carrying out this order.

**IT IS FURTHER ORDERED THAT** Defendants are hereby put on notice that failure to attend the show cause hearing scheduled herein shall result in the confirmation of the seizure authorized herein and the immediate issuance of a preliminary injunction, which shall be deemed to take effect immediately and shall extend during the pendency of this action.  Defendants are hereby further notified that they shall be deemed to have actual notice of the issuance and terms of such preliminary injunction, and that any act by them in violation of any of its terms may be considered and prosecuted as contempt of this Court.

This Court has granted the foregoing seizure without prior written or oral notice to Defendants because specific facts have been put forth to show that Unilever has met the statutory criteria set forth in 15 U.S.C. 1116(d)(4), as detailed *supra* at 12–13.

## SERVICE, OPPOSITION, AND REPLY PAPERS FOR PRELIMINARY INJUNCTION RELIEF

**IT IS FURTHER ORDERED THAT** service of the summons, complaint, the TRO Application and its supporting papers, and this order, shall be served at the time of the seizure by delivering true copies thereof to any person of suitable age found at the premises.  Unilever shall

also serve each Defendant through personal service, by process service, or through counsel, no later than forty-eight hours from the date of the seizure, and shall file proof of service on the docket within three business days of such service.

IT IS FURTHER ORDERED THAT opposition papers by Defendants, if any, shall be filed no later than **May 5, 2022**, and be served personally or by overnight delivery upon the attorneys for Unilever to be received on or before **May 6, 2022**. A courtesy copy shall be delivered to the Court via email at TorresChambersNYSD@nysd.uscourts.gov. Any reply papers by Unilever shall be filed on or before **May 10, 2022**, served on Defendants through personal service or overnight delivery by **May 11, 2022**, and a courtesy copy shall be emailed to the Court at the same time.

## EXPEDITED DISCOVERY

IT IS FURTHER ORDERED THAT, pursuant to Rules 26, 30, and 34 of the Federal Rules of Civil Procedure, Unilever shall be entitled to conduct expedited discovery from all Defendants as follows:

1.      Unilever may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York, and Defendants who are served with this order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Unilever's counsel.

2.      Unilever may serve requests for the production of documents pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and Defendants who are served with this order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Unilever's counsel.

3.      Service of such discovery requests on Defendants shall be deemed good and sufficient if made personally, by process service, or upon counsel, should counsel appear for a Defendant in this action.

4.      All Defendants shall additionally provide witnesses for deposition, pursuant to Rule 30 of the Federal Rules of Civil Procedure, not later than ten (10) days after Unilever serves them with notices of deposition for such witnesses' testimony.  Service of such deposition notices on Defendants shall be deemed good and sufficient if made personally, by process service, or through counsel, should counsel appear for a Defendant in this action.

**IT IS FURTHER ORDERED THAT**, pending the final disposition of all claims in this action, all Defendants shall preserve all documents, electronically-stored information, and/or tangible things that may be relevant to the subject matter of, or reasonably calculated to lead to the discovery of admissible evidence in, this action or any of the claims asserted herein and maintain them in an accessible form and place.

## DOCUMENTS FILED UNDER SEAL

**IT IS FURTHER ORDERED THAT**, pending the hearing on Unilever's motion to confirm the seizure authorized herein, the Clerk of this Court is to keep and maintain under seal all papers filed herein, including this order and the complaint, and that public scrutiny of such papers shall not be permitted, subject to Defendants' right to access such papers upon presenting the Clerk of this Court with proper identification after the seizure authorized herein has been carried out.

## BOND

**IT IS FURTHER ORDERED THAT** a bond or undertaking in the amount of $5,000 be posted with the Clerk of Court by Unilever on or before **May 2, 2022**, to provide security for the

payment of such costs and damages as may be incurred or suffered by any party as a result of a wrongful seizure or wrongfully attempted seizure and such undertaking, if in the form of a check or cash, shall be held in an interest-bearing account.

**PROTECTIVE ORDER**

Within **one business day** of Defendants' appearance in this action, the parties shall provide, for the Court's review, a proposed protective order with respect to discovery and use of any records or information that has been seized, pursuant to the Court's obligation, under 15 U.S.C. § 1116(d)(7), to enter such an order.

SO ORDERED.

Dated: April 29, 2022
      New York, New York

_____
ANALISA TORRES
United States District Judge