USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: _7/6/2022_

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CONOPCO, INC. d/b/a UNILEVER,

   Plaintiff,

v.

2026 THIRD REALTY, LLC, HAE HEE KIM, COURTNEY HAEJIN KIM, DANIEL HUNGSIK KIM, BRYANT KIM, K & K FOOTWEAR, INC., YOUSSOUF DIAGOURAGA, MUSTUFA GANCHI, AMIS DISCOUNTED FURNITURE, LLC, VIBRANT PRINTING AND GRAPHIC CORP., MOHAMAD GANCHI, LAMIN HUMMA, SARJO DAMBELLY, AND JOHN DOES 1–10, INCLUSIVE,

   Defendants.

22-cv-3480 (AT)

FINAL JUDGMENT
AND PERMANENT
INJUNCTION
UPON CONSENT

Plaintiff Conopco, Inc. d/b/a/ Unilever ("Unilever"), having filed a Second Amended Complaint against Defendants Vibrant Printing and Graphic Corporation, Mustafa Ganchi, and Mohamad Ganchi (collectively, the "Vibrant Printing Defendants") along with the other above-captioned Defendants, asserting claims for trademark counterfeiting and infringement, unfair competition and false designation of origin, and dilution under the Lanham Act, as well as trademark infringement, unfair competition and passing off, dilution, and unjust enrichment under New York law; and Unilever and the Vibrant Printing Defendants (collectively, the "Parties") having entered into a confidential Settlement Agreement dated June 30 2022 (the "Settlement Agreement"), such agreement providing for, *inter alia*, the entry of a Final Judgment and Permanent Injunction Upon Consent; and for good cause shown:

**IT IS SO ORDERED, ADJUDGED, AND DECREED:**

1. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1338, and 1367. This Court has personal jurisdiction over the Parties under New York CPLR §§ 301 and/or 302(a), and venue is proper in this District under 28 U.S.C. § 1391(b) and (c).

2. Unilever is the owner of numerous valid and subsisting trademark registrations for the HELLMANN'S trademarks on the Principal Register in the United States Patent and Trademark Office ("PTO") (the "HELLMANN'S Marks"), which alone or in combination appear on Unilever's authentic HELLMANN'S-branded mayonnaise, including:

| | | |
|---|---|---|
| HELLMANN'S (Stylized) **HELLMANN'S** | 0514280 | Mayonnaise, salad dressings, sandwich spread, and tartar sauce |
| [bowtie design] | 1017067 | Salad dressing, mayonnaise, mayonnaise dressing, relish sandwich spread, and |
| BLUE RIBBON HELLMANN'S REAL MAYONNAISE [label image] | 1236589 | |
| BRING OUT THE BEST | 1478873 | |
| HELLMANN'S 'BRING OUT THE BEST' | 4721213 | Mayonnaise and salad dressings |

2

| Mark | Reg. No. | Reg. Date | Goods |
|---|---|---|---|
| HELLMANN'S "BRING OUT THE BEST" | | | |
| Richard Hellmann (Stylized) | 5514321 | | Mayonnaise, tartar sauce, sandwich spread comprised primarily of mayonnaise, ketchup, relish, mustard, or tartar sauce |
| HELLMANN'S EST. 1913 | 5869191 | | Mayonnaise, dressings for salad, ketchup, tomato sauce, sauces, relish, mustard, and vinegar. |
| HELLMANN'S EST. 1913 | 6357670 | May 18, 2021 | Oils and fats for food. |

April 27, 2022 Declaration of Benjamin Murphy ("Murphy Decl.") (Dkt. 21) ¶ 6, Ex. 1.

3. Since at least 1926, Unilever (including through predecessors) has used the HELLMANN'S brand in connection with mayonnaise and related food products in the United States. *Id.* ¶ 3. As a result of billions of dollars in sales, advertising, and promotion, the HELLMANN'S Marks are famous. *Id.* ¶ 4.

4. The Vibrant Printing Defendants acknowledge that the HELLMANN'S Marks are valid, protectable, and famous.

5. Defendants have been marketing and selling counterfeit mayonnaise using the HELLMANN'S Marks without authorization ("Counterfeit Products"). *Id.* ¶ 7; April 27, 2022 Declaration of Stephen Ward ("First Ward Decl.") (Dkt. 23) ¶ 3.

3

6. The Vibrant Printing Defendants designed and made (or caused to be made) 17,500 fake labels containing the HELLMANN'S Marks without Unilever's authorization ("Counterfeit Labels"). May 19, 2022 Declaration of Stephen Ward ("Fourth Ward Decl.") (Dkt. 58) ¶ 5.

7. To create the Counterfeit Labels, Mr. Mustafa Ganchi visited the AMIS Discounted Furniture LLC storefront located at 2026 3rd Avenue New York, NY 10029-2886 ("AMIS Storefront"). At the AMIS Storefront, Mr. Mustafa Ganchi took measurements of jars of expired Hellmann's mayonnaise and removed some of the original labels for reference. *Id.* ¶ 7.

6. The Vibrant Printing Defendants then created the Counterfeit Labels. *Id.* ¶ 7.

8. The Vibrant Printing Defendants have engaged in unauthorized use of the HELLMANN'S Marks on the Counterfeit Labels which were affixed to expired products, and these unauthorized uses are likely to confuse and deceive the consuming public into thinking that the Counterfeit Products emanate from and/or are authorized by Unilever. The Vibrant Printing Defendants' activities described in the Second Amended Complaint (Dkt. 61), the Revised Proposed Preliminary Injunction Order (Dkt. 95), and the Court's June 8, 2022 Preliminary Injunction Order (Dkt. 101) (the "Infringing Activities") constitute trademark infringement, trademark counterfeiting, trademark dilution, unfair competition, and false designation of origin under 15 U.S.C. §§ 1117, 1125(a), 1125(c), and New York common law.

9. The Vibrant Printing Defendants acknowledge that their Infringing Activities were willful and have caused and/or likely to cause Unilever and the HELLMANN'S Marks irreparable harm and injury.

**BASED UPON THE FOREGOING, IT IS FURTHER ORDERED THAT:**

4

The Vibrant Printing Defendants and their employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, shippers, contractors, dealers, and all persons in active concert or participation with any of them are permanently enjoined from:

1. Using any of the HELLMANN'S Marks, in connection with the manufacture, sale, offer for sale, distribution, or advertising of any products, packaging, labels, and/or any other materials;

2. Committing any acts calculated to cause purchasers to believe that the Counterfeit Products and/or the Counterfeit Labels are sold under the control or supervision of Unilever, when they are not;

3. Selling, passing off, inducing, or enabling others to sell or pass off any products— including without limitation HELLMANN'S mayonnaise—as Unilever goods or as produced by or for Unilever, which are not Unilever's genuine goods, or are not sold under the control or supervision of Unilever;

4. Directly or indirectly manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling any Counterfeit Products, Counterfeit Labels, or any counterfeit or infringing packaging, labels, signage, and/or any other materials in any medium for the same;

5. Using any reproduction, counterfeit, copy, or colorable imitation of any of the HELLMANN'S Marks in connection with the publicity, promotion, sale, or advertising of any products;

6. Affixing, applying, annexing, or using in connection with the sale, offer for sale, or advertising of any goods, a false description or representation including words or

5

other symbols tending to falsely describe or represent such goods as Unilever goods and from offering such goods in commerce;

7. Diluting any of the HELLMANN'S Marks; and

8. Assisting, inducing, enabling, aiding, or abetting any other person or business entity engaging in or performing any of the activities referred in subparagraphs 1–7 above.

**IT IS FURTHER ORDERED THAT**, the Vibrant Printing Defendants are directed to immediately:

1. Destroy all Counterfeit Products, Counterfeit Labels, packaging, labels, signage, advertisements, promotional materials, stationery, forms, mockups, designs, prototypes, and/or any other materials and things in any medium within their custody, possession, or control that contain or bear the HELLMANN'S Marks or any other mark, logo, tagline, slogan, design, designation, or indicator that is confusingly similar to or dilutive of the HELLMANN'S Marks;

2. Cooperate in good faith with any law enforcement or other government authorities (whether domestic or foreign), Unilever, and Unilever's agents, investigators, and attorneys regarding the above-mentioned destruction of the Counterfeit Products and Counterfeit Labels; and

3. Within thirty (30) days after the entry of this Court's Final Judgment and Permanent Injunction Upon Consent, file with the Court and serve on counsel for Unilever a written statement under oath setting forth in detail the manner and form in which the Vibrant Printing Defendants have complied with and completed these actions (including destruction of the Counterfeit Labels).

**IT IS FURTHER ORDERED THAT**, the Vibrant Printing Defendants shall pay Unilever the amount set forth in the Parties' confidential Settlement Agreement as a measure of the statutory damages permissible under 15 U.S.C. § 1117(c) and (d). The Vibrant Printing Defendants' obligation under the Settlement Agreement to make such payments to Unilever is incorporated herein.

**IT IS FURTHER ORDERED THAT**, the Vibrant Printing Defendants have consented to the entry of this Final Judgment and Permanent Injunction Upon Consent, acknowledge that the Final Judgment and Permanent Injunction Upon Consent adjudicates all claims related to this matter, and waive any and all rights of appeal.

The Clerk of this Court is directed to enter this Final Judgment and Permanent Injunction Upon Consent forthwith, without further notice.

**ACKNOWLEDGED AND AGREED TO:**

Dated: 30 June 2022

Conopco, ver

By: *Risa Drexler* (DocuSigned 268D21C606E94E9...)

Name: Risa Drexler

7

Title: Own General Counsel – Litigation

Dated: 06-28-2022

**Vibrant Printing and Graphic Corp.**

Mohamad Ganchi
Owner

Dated: 06-28-2022

**Mustafa Ganchi**

Dated: 06-28-2022

**Mohamad Ganchi**

The Clerk of Court is directed to terminate Defendants Vibrant Printing and Graphic Corp., Mohamad Ganchi, and Mustafa Ganchi from this matter.

**JUDGMENT IS HEREBY ENTERED.**

Dated: July 6, 2022
New York, New York

_____
ANALISA TORRES
United States District Judge

8